**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

MARY-DENISE ROBERTS and
STEPHEN K. ROBERTS,

        **Plaintiffs,**

v.                                                            Case No. 6:25-cv-886-JA-LHP

USAA FEDERAL SAVINGS
BANK, APPLE PAYMENTS,
INC., and GREEN DOT BANK,

        **Defendants.**

_____

## ORDER

This case is before the Court on the motion to dismiss (Doc. 37) filed by Defendant, Apple Payments, Inc.,[1] the response (Doc. 40) filed by Plaintiffs Mary-Denise Roberts and Stephen K. Roberts, and Apple's reply (Doc. 49). Based on the Court's review of the parties' submissions, the motion must be granted.

## I.    BACKGROUND

On October 8, 2024, Plaintiff Mary-Denise Roberts was scammed by a fraudster into providing access to her USAA bank account. (Compl., Doc. 1,

---

[1] In its reply (Doc. 49), Apple Payments, Inc. asserts that its correct name is "Apple Payment Services." However, to maintain consistency with the case caption, the Court will refer to the entity as "Apple Payments, Inc." or "Apple."

¶¶ 1–2, 31). The scam began when Mrs. Roberts received a phone call from an individual claiming to be a USAA agent alerting her to a suspicious transaction in her account. (*Id.* ¶¶ 19, 22). The caller—who "spoofed" the telephone number of the USAA customer-service line—gained credibility by detailing transactions that matched Mrs. Roberts's activities and providing her location, which she believed only a legitimate USAA representative could know. (*Id.* ¶¶ 23–24).

The fraudster claimed that Mrs. Roberts's USAA debit card information was compromised and that she needed to provide her Apple Pay credentials to rectify the problem. (*Id.* ¶ 26). Mrs. Roberts provided her Apple Pay ID, which the fraudster used to take control of her iPhone. (Compl. ¶¶ 27–28). From there, the fraudster initiated two unauthorized transfers totaling $9,286.80 from her USAA bank account to her Apple Pay account and then sent the funds from the Apple Pay account to unknown bank accounts. (*Id.* ¶¶ 27–31).

Plaintiffs disputed the transactions with USAA. (*Id.* ¶ 32). USAA initially issued a provisional credit, but after investigating the transactions, USAA rejected Plaintiffs' dispute and reversed the provisional credit. (*Id.* ¶¶ 33–36). Plaintiffs then disputed the transactions with Apple, which shared the dispute with Green Dot—the entity that provides "banking-as-a-service" to Apple. (*Id.* ¶ 37). Both Apple and Green Dot denied Plaintiffs' claim. (Compl. ¶¶ 38–39).

Plaintiffs brought suit against Defendants Apple, Green Dot, and USAA under the Electronic Fund Transfers Act, 15 U.S.C. §§ 1693 *et seq.* (EFTA), and

2

its associated regulations, 12 C.F.R. §§ 1005.01–1005.36 (Regulation E). (Doc. 1). Apple now moves to dismiss, claiming it is not bound by the EFTA. (Doc. 37).

## II.    LEGAL STANDARDS

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[D]etailed factual allegations" are not required, but "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). In considering a Rule 12(b)(6) motion to dismiss, a court limits its "consideration to the well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed." *LaGrasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004).

## III.    DISCUSSION

The EFTA imposes error-resolution obligations only on entities that qualify as "financial institutions" with respect to a given transaction. 15 U.S.C. § 1693f. Accordingly, to prevail on an EFTA claim, the complaint "must plausibly allege that each Defendant is a 'financial institution.'" *Edson v. Wells Fargo Bank* N.A., Case No. 2025 WL 890737, at *2 (N.D. Fla. Mar. 5, 2025)

(collecting cases). The issue here is whether Apple qualifies as a financial institution under the EFTA.

Under the EFTA, a "financial institution" is a "State or National bank, a State or Federal savings and loan association, a mutual savings bank, a State or Federal credit union, or any other person who, directly or indirectly, holds an account belonging to a consumer." 15 U.S.C. § 1693a(9). Regulation E further states that a financial institution "issues an access device and agrees with a consumer to provide electronic fund transfer services." 12 C.F.R. § 1005.2(i).

Plaintiffs' complaint alleges that Apple is a "financial institution," (Compl. ¶ 13), but does not provide any underlying facts supporting that allegation. In their response to the motion to dismiss, Plaintiffs assert for the first time that Apple qualifies as a financial institution because: (1) Apple "indirectly" controls consumer accounts through its "banking-as-a-service" relationship with Green Dot; and (2) Apple issues access devices and agrees to provide electronic fund transfer (EFT) services to consumers. (Doc. 40 at 4, 6). But these allegations are not made in the complaint. *See Allen v. St. John*, 827 F. App'x 1002, 1007 n.7 (11th Cir. 2020);[2] *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th

---

[2] In the Eleventh Circuit, "unpublished decisions . . . bind no one," *Ray v. McCullough Payne & Haan, LLC*, 838 F.3d 1107, 1109 (11th Cir. 2016), but "may be cited as persuasive authority," 11th Cir. R. 36-2.

4

Cir. 2004). Nevertheless, the Court has considered Plaintiffs' arguments and finds them unavailing.

Plaintiffs argue that the complaint adequately alleges that Apple indirectly holds consumer accounts. These allegations include that: Green Dot "provides banking-as-a-service to Defendant Apple," (Compl. ¶¶ 14, 37); consumers open "Apple Pay account[s]" linked to their debit cards, (*id.* ¶ 18); the fraudsters were able to access the account using Mrs. Roberts's "Apple Pay ID," (*id.* ¶ 27); Plaintiffs "disputed the unauthorized transactions with Defendant Apple," (*id.* ¶ 37); Apple "shared the dispute with Defendant Green Dot," (*id.* ¶ 37); and "Green Dot and Apple unlawfully denied Plaintiffs' claim," (Compl. ¶ 38). Based on these and other, similar allegations, Plaintiffs assert that "Apple indirectly holds consumer accounts" and that the complaint plausibly alleges Apple is a financial institution under the EFTA. (Doc. 40 at 5–6).

But Plaintiffs do not plausibly allege that Apple holds an "account"—indirectly or otherwise. In relevant part, an "account" means "a demand deposit, savings deposit, or other asset account." 15 U.S.C. § 1693a(2). Plaintiffs have alleged that, through its "banking-as-a-service" relationship with Green Dot, Apple enables financial transactions to occur via Apple Pay. But assertions of Apple's purported "operational control" over certain payment processes do not amount to a plausible allegation that Apple is a holder of the account. (Doc. 40 at 4–5). *See Lumbus v. Huntington Bank*, No. 1:25-CV-00190, 2025 WL 2391456,

at *6 (N.D. Ohio Aug. 18, 2025) (finding that allegations of a defendant's "influence" and "control" over the fund removal process did not sufficiently plead that the defendant holds an "account"); *Tristan v. Bank of Am.*, No. SACV2201183DOCADS, 2023 WL 4417271, at *11 (C.D. Cal. June 28, 2023) (determining that the entity that operates Zelle—a platform that enables consumers to transfer funds in and out of third-party bank accounts—is not a financial institution because Zelle "does not issue access devices, hold accounts, or enter into agreements with consumers to provide [EFT] services" even though Zelle possesses personally identifiable information used in connection with financial transactions); *Lion Fed. Credit Union v. Worldpay, LLC*, No. 1:24-CV-163, 2024 WL 1704551, at *10 n.6 (S.D. Ohio Apr. 19, 2024) (holding that a "strong argument" exists that Worldpay, a payment processing company, is not a financial institution under the EFTA—even though it enables financial transactions to occur—because it does not "hold[] customers' financial accounts as a financial institution would").

Plaintiffs have also not alleged that Apple issued an "access device" or entered into an agreement to provide EFT services—both of which are required under 12 C.F.R. § 1005.2(i) for an entity to qualify as a financial institution. Under Regulation E, an "access device" includes "debit cards, personal identification numbers (PINs), telephone transfer and telephone bill payment codes, and other means that may be used by a consumer to initiate [EFT] to or

6

from a consumer account." 12 C.F.R. § 1005.2(a)(1). Plaintiffs argue that Mrs. Roberts's Apple Pay ID credentials constitute an "access device" under the EFTA, (Doc. 40 at 7), but Plaintiffs do not allege that the "Apple ID log in provide[d] access to the account from which the consumer's funds are transferred." *Saldate v. Apple Inc.*, Case No. 2025 WL 1094307, at *2–3 (D. Ariz. Apr. 11, 2025). Thus, Plaintiffs' argument that the Apple Pay credentials constitute an access device within the meaning of the EFTA falls flat.

Moreover, Plaintiffs' complaint contradicts the contentions made in their response. The complaint alleges that the fraudsters used Mrs. Roberts's Apple Pay ID to access her iPhone, from which the fraudsters made the unauthorized transfers from her bank account, (Compl. ¶ 28)—not that her Apple Pay ID credentials provided access to the consumer account itself. *See Pinnock o/b/o ADA Consultants & Advisors, Inc. v. Wal-Mart Stores, Inc.*, No. 6:09-cv-143-Orl, 2009 WL 10670000, at *1 n.1 (M.D. Fla. Aug. 10, 2009) ("Where [a plaintiff's] [r]esponse contradicts the [c]omplaint, however, th[e] Court will consider the allegations in the [c]omplaint as controlling.").

Lastly, Plaintiffs' assertion that Apple "agrees with the consumer to provide [EFT] services," (Doc. 40 at 1, 3, 6–7), "is no more than a legal conclusion that restates an element of their claim." *Tristan*, 2023 WL 4417271, at *12. Indeed, "[n]owhere in the [c]omplaint do Plaintiffs point to any agreement entered into with [Apple] for the provision of EFT services." *Id.* Here, Plaintiffs

7

entirely fail to allege the existence of such an agreement in the complaint, and the belated assertions in the response are conclusory in nature. The Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555. Accordingly, the complaint must be dismissed.

## IV.    CONCLUSION

For the reasons given above, it is **ORDERED** that Defendant, Apple Payments, Inc's motion to dismiss (Doc. 37) is **GRANTED**. The complaint against Apple (Doc. 1) is **DISMISSED without prejudice**. Plaintiffs may file an amended complaint on or before **February 17, 2026**.

**DONE** and **ORDERED** in Orlando, Florida, on February 2, 2026.

JOHN ANTOON II
United States District Judge

Copies furnished to:
Counsel of Record

8