UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

MARY-DENISE ROBERTS and
STEPHEN K. ROBERTS,

     Plaintiffs,

v.                                                                    Case No. 6:25-cv-886-JA-LHP

USAA FEDERAL SAVINGS
BANK, APPLE PAYMENTS,
INC., and GREEN DOT BANK,

     Defendants.

_____

## ORDER

This case is before the Court on Defendant, Apple Payments, Inc.'s motion to dismiss (Doc. 57), Plaintiffs, Mary-Denise Roberts and Stephen K. Roberts's response (Doc. 60), and Apple's reply (Doc. 63). Based on the Court's review of the parties' submissions, the motion must be granted.

## I.    BACKGROUND

In October 2024, a fraudster convinced Plaintiff Mary-Denise Roberts to disclose her Apple account credentials. (Am. Compl., Doc. 53, ¶ 45). The fraudster then used Mrs. Roberts's Apple account credentials to access her iPhone, from which the fraudster initiated two unauthorized bank transfers from Plaintiffs' USAA bank account to Mrs. Roberts's Apple Cash account totaling $9,200.00. (*Id.* ¶ 47). The fraudster then transferred the funds from

Mrs. Roberts's Apple Cash account to unknown and inaccessible third-party accounts. (*Id.* ¶ 48). Plaintiffs disputed the transactions with Defendants USAA Federal Savings Bank, Green Dot Bank, and Apple, (*Id.* ¶¶ 50, 52, 56), but Plaintiffs were not reimbursed for the stolen funds. (*Id.* ¶ 57).

Plaintiffs brought suit against Defendants under the Electronic Fund Transfers Act, 15 U.S.C. §§ 1693 *et seq.* (EFTA), and its associated regulations, 12 C.F.R. §§ 1005.01–1005.36 (Regulation E). (Doc. 1). On February 2, 2026, the Court dismissed Plaintiffs claims against Apple without prejudice upon Apple's motion to dismiss for failure to state a claim. (Doc. 50). Plaintiffs filed an amended complaint against Apple under the EFTA on February 23, 2026. (Doc. 53). Apple now moves to dismiss the amended complaint for failing to plausibly allege that Apple is bound by the EFTA. (Doc. 57).

## II.    LEGAL STANDARDS

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[D]etailed factual allegations" are not required, but "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.*

(quoting *Twombly*, 550 U.S. at 570). In considering a Rule 12(b)(6) motion to dismiss, a court limits its "consideration to the well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed." *LaGrasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004).

## III.  DISCUSSION

The EFTA requires entities that qualify as "financial institutions" to protect consumers against unauthorized electronic fund transfers. 15 U.S.C. § 1693f. To state a claim for relief under the EFTA, a complaint "must plausibly allege that [the] Defendant is a 'financial institution.'" *Edson v. Wells Fargo Bank N.A.*, No. 3:24CV635/TKW/ZCB, 2025 WL 890737, at *2 (N.D. Fla. Mar. 5, 2025) (collecting cases), *report and recommendation adopted*, No. 3:24CV635-TKW-ZCB, 2025 WL 890162 (N.D. Fla. Mar. 21, 2025). The issue here is whether Apple qualifies as a "financial institution."

Under the EFTA, a "financial institution" is a "State or National bank, a State or Federal savings and loan association, a mutual savings bank, a State or Federal credit union, or any other person who, directly or indirectly, holds an account belonging to a consumer." 15 U.S.C. § 1693a(9). Regulation E further states that a "financial institution" is a person or entity that "issues an access device and agrees with a consumer to provide electronic fund transfer services." 12 C.F.R. § 1005.2(i).

3

In its prior Order (Doc. 50), the Court concluded that Plaintiffs failed to adequately allege that Apple qualified as a financial institution as defined in 15 U.S.C. § 1693a(9) and 12 C.F.R. § 1005.2(i). The Court found that Plaintiffs' allegation that Apple controls the Apple Pay service in which Plaintiffs' debit card was stored was not sufficient to plausibly allege that Apple was a holder of an account within the meaning of 15 U.S.C. §§ 1693a(2) and 1693a(9). The Court also determined that Plaintiffs failed to adequately allege that Apple issued an access device because Plaintiffs did not plead that Mrs. Roberts's Apple credentials provided access to Plaintiffs' bank account. (Doc. 50 at 7). Additionally, the Court determined that Plaintiffs did not plausibly allege that Apple agreed to provide electronic fund transfer services. (*Id.*). The Order is in line with several other district court opinions rejecting the application of EFTA in the context of digital payment apps and services.[1]

The Amended Complaint (Doc. 53) makes new allegations about Apple's digital payment infrastructure that attempt to rectify these pleading

---

[1]. *See, e.g., Edson v. Wells Fargo Bank N.A.*, No. 3:24CV635/TKW/ZCB, 2025 WL 890737, at *2 (N.D. Fla. Mar. 5, 2025) (finding that Apple is not a financial institution), *report and recommendation adopted*, No. 3:24CV635-TKW-ZCB, 2025 WL 890162 (N.D. Fla. Mar. 21, 2025); *Saldate v. Apple Inc.*, No. CV-24-02796-PHX-SPL, 2025 WL 1094307, at *3 (D. Ariz. Apr. 11, 2025) (same); *Tristan v. Bank of Am.*, No. SA CV 22-01183-DOC-ADS, 2023 WL 4417271, at *11–12 (C.D. Cal. June 28, 2023) (determining that Zelle is not a financial institution); *Zepeda v. PayPal, Inc.*, No. C 10-2500, 2017 WL 1113293, at *11 & n.13 (N.D. Cal. Mar. 24, 2017) (opining that PayPal is likely not a financial institution); *Lion Fed. Credit Union v. Worldpay, LLC*, No. 1:24-CV-163, 2024 WL 1704551, at *10 n.6 (S.D. Ohio Apr. 19, 2024) (opining that Worldpay is likely not a financial institution).

4

deficiencies. These new allegations include that: Mrs. Roberts had an Apple Cash account for which Apple is the service provider, (*id.* ¶¶ 18, 23); Apple Wallet, Apple Cash, and Apple Pay allow users to send and receive money and function as "digital debit cards," (*id.* ¶¶ 20, 31); a customer must have an Apple device and an Apple account in good standing with Apple to use Apple Cash, (*id.* ¶ 24); "Apple's wallet, in conjunction with Apple Cash and Apple Pay, constitute a consumer account (or series of consumer accounts) held directly or indirectly by Apple," (*id.* ¶ 29 (emphasis removed)); Apple agreed to provide electronic fund transfer services, (*Id.* ¶ 32); and Apple is a "licensed money transmitter" with the ability to unilaterally execute or indefinitely prevent a transaction, (*id.* ¶¶ 33–34).

The amended complaint also references three separate consumer agreements to support Plaintiffs' allegations. These agreements are: (1) Apple Pay & Wallet Terms and Conditions, (Doc. 60-2); (2) Apple Cash Terms and Conditions, (Doc. 60-3); and (3) Direct Payments Terms and Conditions, (Doc. 60-4). Apple objects that Plaintiffs' response provides factual arguments about the content of these agreements that do not appear on the face of the amended complaint. (Doc. 63 at 2–3). However, courts must consider "documents incorporated into the complaint by reference" when ruling on a motion to dismiss. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

The Court has considered the agreements in conjunction with the

allegations of the amended complaint and finds that Plaintiffs have again failed to plausibly state a claim.

### A.   Plaintiffs Fail to Plausibly Allege that Apple Holds an Account Under 15 U.S.C. § 1693a(9).

The amended complaint is bereft of allegations to support the proposition that Apple "holds" an "account." First, Plaintiffs assert that Apple "holds" an account because pursuant to the Direct Payments Terms and Conditions, Apple has the ability to remove money from an Apple Cash account to pay eligible merchants as directed by the consumer. (*See* Doc. 60-4 at 1–2). Plaintiffs argue that this provision of the Direct Payments Terms and Conditions provides factual support for their assertion that funds in an Apple Cash account are under Apple's "dominion." (Doc. 60 at 12). However, the concept of "dominion" over an account is foreign to the EFTA and Regulation E, and Plaintiffs do not adequately allege in the amended complaint that their notion of "dominion" corresponds with the EFTA's requirements. Moreover, Plaintiffs' statement that Apple holds the account "indirectly" because it "controls payments funneled through the account" is conclusory in nature and has already been rejected by this Court. (*See* Doc. 50 at 5 (finding that "assertions of Apple's purported 'operational control' over certain payment processes do not amount to a plausible allegation that Apple is a holder of the account")). Plaintiffs otherwise

6

make no plausible factual allegations that Apple "holds" an account under the EFTA.

Plaintiffs have also not plausibly pleaded that Apple Wallet, Apple Pay, or Apple Cash constitutes an "account" under the EFTA. In relevant part, an "account" means "a demand deposit, savings deposit, or other asset account." 15 U.S.C. § 1693a(2). Although the amended complaint alleges that "Apple's wallet, in conjunction with Apple Cash and Apple Pay, constitute a consumer account (or series of consumer accounts) held directly or indirectly by Apple," (*Id.* ¶ 29 (emphasis removed)), this allegation is not supported by any facts showing that the statutory definition of "account" is met.

Plaintiffs point to the Apple Pay & Wallet Terms and Conditions as providing that the Apple Wallet is an "envelope for different accounts," but this concept of acting as an "envelope for different accounts" is not tantamount to a plausible allegation that the Apple Wallet is an "account" under § 1693a(2). (Doc. 60 at 5).

Plaintiffs also assert that the Apple Cash Terms and Conditions show that Apple Cash is a "Payment Account" that can "receive and hold [u]sers' funds that are accessible by the Apple Cash Card," (Doc. 60-3 at 4), and that the Direct Payments Terms and Conditions refer to this "Payment Account" as an account from which money may be withdrawn and paid. (Doc. 60 at 11–12 (citing Doc. 60-3 at 4 & Doc. 60-4 at 1)). But the amended complaint fails to connect the

concept of the "Payment Account" described in the Apple Cash Terms and Conditions and the Direct Payments Terms and Conditions to the statutory definition of "account" in § 1693a(2). And as already explained, Plaintiffs' assertions that Apple facilitates certain payments, without more, are not sufficient to plausibly plead that the at-issue Apple services constitute an "account" under the EFTA. *See Lumbus v. Huntington Bank*, No. 1:25-CV-00190, 2025 WL 2391456, at *6 (N.D. Ohio Aug. 18, 2025) (finding that allegations of a defendant's "influence" and "control" over the fund removal process did not sufficiently plead that the defendant holds an "account").

Plaintiffs have again failed to plausibly allege that Apple holds an account as contemplated in EFTA. Therefore, Plaintiffs have failed to adequately plead that Apple is a "financial institution" beholden to the error-resolution procedures outlined in EFTA.

### B.    Plaintiffs Fail to Plausibly Allege that Apple Issues Access Devices and Agrees to Provide Electronic Fund Transfer Services to Consumers Under 12 C.F.R. § 1005.2.

Plaintiffs have also failed to adequately allege that Apple is a financial institution under Regulation E because the amended complaint lacks sufficient factual allegations that Apple issues access devices and agrees to provide electronic fund transfer services to consumers.

Plaintiffs claim Apple issues "access devices," alleging that Apple Wallet, Apple Cash, and Apple Pay function as "digital debit cards" that "permit direct

and indirect access to consumer accounts." (Doc. 53 ¶¶ 26, 31). Once again, Plaintiffs' assertions are untethered from any statutory or regulatory definition. Section 1005.2(a)(1) defines an "access device" as "a card, code, or other means of access to a consumer's account, or any combination thereof, that may be used by the consumer to initiate electronic fund transfers." Regulation E provides examples of "access devices," including "debit cards, personal identification numbers (PINs), telephone transfer and telephone bill payment codes, and other means that may be used by a consumer to initiate electronic fund transfer services to or from a consumer account." 12 C.F.R. pt. 1005, Supp. I ¶ 2(a)(1)).

Plaintiffs fail to plausibly allege that Apple is a financial institution under Regulation E because the putative "access device" discussed in section 1005.2(a)(1) must provide access to an EFTA "account" to qualify. As previously explained, Plaintiffs have failed to plausibly allege that the at-issue Apple services to which Mrs. Roberts's Apple credentials provided access are "accounts" under EFTA. And Plaintiffs have not alleged that Mrs. Roberts's Apple credentials provided access to the accounts from which the funds were actually stolen in this case or to any other EFTA account. (Doc. 53 ¶ 47); *see Saldate v. Apple Inc.*, No. CV-24-02796-PHX-SPL, 2025 WL 1094307, at *2–3 (D. Ariz. Apr. 11, 2025).

Next, Plaintiffs' allegation that Apple "agrees to provide electronic fund transfer services to consumers" is supported only by conclusory assertions in the

9

amended complaint. (*See* Doc. 53 ¶¶ 13, 32, 35–36); *see also Tristan v. Bank of Am.*, No. SA CV 22-01183-DOC-ADS, 2023 WL 4417271, at *12 (C.D. Cal. June 28, 2023). In their response, Plaintiffs point to the Direct Payments Terms and Conditions, which state that Apple may "withdraw . . . funds from [the consumer's] Payment Account and electronically transmit those funds to" "certain eligible businesses . . . that [the consumer] authorize[s]." (Doc. 60-4 at 1–2). Plaintiffs note that the Direct Payments Terms and Conditions characterize Apple's service as an "electronic funds transfer." (Doc. 60 at 15 (citing Doc. 60-4 at 2)). Plaintiffs again conflate a term used in a consumer agreement—here, "electronic funds transfer"—with a regulatory definition, without providing any factual allegations that a correspondence between the terms exists. *See* 12 C.F.R. § 1005.3(b)(1) (providing that "[t]he term 'electronic fund transfer' means any transfer of funds that is initiated through an electronic terminal, telephone, computer, or magnetic tape for the purpose of ordering, instructing, or authorizing a financial institution to debit or credit a consumer's account"). Plaintiffs' assertion that Apple agrees to provide electronic transfer services is conclusory.

Plaintiffs have once again failed to plausibly allege that Apple issues access devices and agrees to provide electronic fund transfer services as defined in Regulation E. Plaintiffs thus have not plausibly alleged that Apple is a financial institution.

## C. Leave to Amend

District courts across the country have uniformly "expressed skepticism" that entities that facilitate digital payments such as Apple qualify as "financial institutions" under EFTA. *Saldate*, 2025 WL 1094307, at *3. This Court shares that skepticism. Having already permitted Plaintiffs the opportunity to amend their complaint once, the Court finds that further amendment would be futile. Accordingly, the amended complaint must be dismissed with prejudice.

## IV. CONCLUSION

For the reasons given above, it is **ORDERED** that Defendant, Apple Payments, Inc's motion to dismiss (Doc. 57) is **GRANTED**. The amended complaint against Apple (Doc. 53) is **DISMISSED with prejudice**.

**DONE** and **ORDERED** in Orlando, Florida, on May 28, 2026.

JOHN ANTOON II
United States District Judge

Copies furnished to:
Counsel of Record

11